GEORGE B. PIGGOTT (SBN 68227)
a member of GEORGE B. PIGGOTT,
A PROFESSIONAL CORPORATION
2603 Main Street, Penthouse
Irvine, California 92614
Tel:    (949) 261-0500
Fax:    (949) 261-1085
Email: george@piggottlaw.com

Attorney for Plaintiff Wayne Calco

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE CALCO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ÖSSUR AMERICAS, INC., a California corporation; ÖSSUR hf, an Icelandic company; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No. 8:22-cv-1971**<br><br>**COMPLAINT FOR DECLARATORY RELIEF; BREACH OF WRITTEN CONTRACT; FRAUD; UNJUST ENRICHMENT; CORRECTION OF PATENT TO ADD UNNAMED INVENTOR; AND DETERMINATION OF INVALIDITY OF PATENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, WAYNE CALCO, alleges and claims as follows:

## JURISDICTION AND VENUE

1.   This court has subject matter jurisdiction over the First, Second, Fourth, Fifth, Sixth and Seventh Claims for Relief under 28 USC §1331 because they arise under federal patent law or arise under an Act of Congress relating to patents. The First, Second, Fourth and Fifth Claims for Relief depend on the resolution of substantial questions of federal patent law concerning the patentability of Plaintiff's inventions that are the subject of his claims, the defendants' failure to name Plaintiff as an inventor in patents and patent applications, and/or the applicability of the defendants' patents and patent applications to Plaintiff's inventions. This court has subject matter jurisdiction over the Sixth and Seventh Claims for Relief under 28 USC §1338(a) because they arise under an Act of

COMPLAINT

Congress relating to patents. This court has supplemental jurisdiction over the Third Claim for Relief because it is related to, arises from a common nucleus of operative facts, and is part of the same controversy as the First, Second, Fourth, Fifth, Sixth and Seventh Claims for Relief notwithstanding the fact that it does not raise any substantial questions of federal patent law. The Superior Court of California for the County of Orange, Judge William Claster presiding, ruled in the case of *Wayne Calco v. Ossur Americas, Inc., et. al*., Orange County Superior Court Case No. 30-2021-01202543-CU-BC-CJC ("the State Court Action"), that the claims alleged in the first amended complaint filed in the State Court Action which are substantively the same as the Second, Third, Fourth and Fifth Claims for Relief alleged herein are subject to the exclusive jurisdiction of the federal district courts pursuant to 28 USC §1331 because they arise under federal patent law.

2.    Venue is proper in the Central District of California under 28 USC §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the Central District of California, and Defendant ÖSSUR hf is not resident in the United States and may therefore be sued in any judicial district, including the Central District of California. Furthermore, the parties contractually agreed to venue for legal actions arising out of or relating to the agreement which is the subject of this action in Orange County, California, which is within the Southern Division of the Central District of California.

## THE PARTIES

3.    Plaintiff, WAYNE CALCO, is an individual and shall be referred to hereinafter as either "Plaintiff" or "CALCO".

4.    Plaintiff is informed and believes and thereon alleges that Defendant ÖSSUR AMERICAS, INC. is a corporation organized under the laws of the State of California and has its headquarters and principal place of business headquartered in the County of Orange, State of California.

5.    Plaintiff is informed and believes and thereon alleges that Defendant ÖSSUR hf, also known as ÖSSUR ehf, is a company of unknown legal nature organized under the laws of Iceland and/or Denmark. Plaintiff is informed and believes and thereon alleges that Defendant ÖSSUR AMERICAS, INC. is ostensibly a subsidiary of ÖSSUR hf but there is such a lack of separation and

COMPLAINT

control both legally, operationally and financially that Defendants ÖSSUR AMERICAS, INC. and ÖSSUR hf are in fact one and the same entity, and alter egos of each other, and should be treated as such in order to avoid inequitable results. Such lack of separation and control is supported by the fact that Defendant ÖSSUR AMERICAS, INC. is wholly owned by ÖSSUR hf and Defendants ÖSSUR AMERICAS, INC. and ÖSSUR hf have common management. More particularly, Defendants ÖSSUR AMERICAS, INC. and ÖSSUR hf have the same chief executive officer, who is also a director of Defendant ÖSSUR AMERICAS, INC.; the chief financial officer of Defendant ÖSSUR AMERICAS, INC. is an officer of Defendant ÖSSUR hf; and the chief financial officer of Defendant ÖSSUR hf is a director of Defendant ÖSSUR AMERICAS, INC. Defendants ÖSSUR AMERICAS, INC. and ÖSSUR hf also have the same intellectual property and litigation counsel. Defendants ÖSSUR AMERICAS, INC. and ÖSSUR hf have an integrated website that treats ÖSSUR AMERICAS, INC. and ÖSSUR hf and their facilities, operations, products and people as one company which is publicly traded and reports its financial results on consolidated financial statements. Consistent with and indicative of such unity of interest, and lack of separation and control, the Agreement identified in Paragraph 9 herein below provides that the Intellectual Property defined in Paragraph 9 shall be the exclusive property of ÖSSUR hf as well as ÖSSUR AMERICAS, INC. Additionally, ÖSSUR hf has caused all of the patents and patent applications referenced herein below to be issued in its name instead of the name of ÖSSUR AMERICAS, INC.  ÖSSUR AMERICAS, INC. and ÖSSUR hf shall be collectively referred to hereinafter as "ÖSSUR."

6.     Plaintiff is unaware of the true names of Defendants DOES 1 through 10, inclusive, and therefore sues them by such fictitious names. Plaintiff will amend this complaint to allege the true names of Defendants DOES 1 through 10, inclusive, when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10, inclusive, are responsible and/or liable in some manner for the matters alleged herein.

7.     Plaintiff is informed and believes and thereon allege that each of the defendants named and sued herein are the agents, servants, employees, and/or co-venturers of each of the other defendants, and were, in committing the acts and/or omissions alleged herein, acting in the course and scope of such capacity.

COMPLAINT

# BACKGROUND FACTS

## The Services Agreement

8.    CALCO and ÖSSUR AMERICAS, INC. entered into a written agreement entitled the "Services Agreement" on or about October 29, 2015 ("the Agreement").  Pursuant to the Agreement, CALCO was retained as an independent contractor to perform design services for ÖSSUR related to its adjustable cervical collar project. The Agreement provides, *inter alia,* that CALCO was to be compensated for his services by ÖSSUR's payment to him of consultancy fees. The Agreement also provides that CALCO is to receive a royalty (hereinafter referred to as "the Royalty") based on sales made by ÖSSUR of patented products, designs or processes that are protected and covered by valid issued claims contained in patents owned or controlled by ÖSSUR that name CALCO as an inventor or co-inventor and that are based on concepts that he created prior to entering into the Agreement as evidenced by written records. The Royalty is a specified percentage of the "net selling price", as that term is defined in the Agreement, of sales of patented products that are made by ÖSSUR to its customers, payable for the life of the patent or patents. CALCO was to receive two advanced royalty payments, regardless of whether or not the Royalty was ultimately due to CALCO. The first advanced payment was payable upon signing of the Agreement and was paid to CALCO. The second advanced payment was $20,000, which was due upon successful completion of the product development phase called "Gate 2.1" in the Agreement. The second advanced payment was never paid to CALCO. The Agreement further provides, *inter alia,* that all documents, materials, products, therapies, data, drawings, designs, analyses, graphs, reports, tooling, physical property, computer programs, ideas, methods, discoveries, improvements, concepts, ideas and other forms of tangible expression, inventions or developments, in any media now or hereafter produced, created, or conceived by CALCO in connection with the services provided under the Agreement, or which are otherwise the results or proceeds of the services  performed under the Agreement, would at all times be and remain the exclusive property of ÖSSUR AMERICAS, INC. and its affiliates, including but not limited to ÖSSUR hf. The Agreement also provides that all right, title and interest in and to any intellectual property developed by CALCO pursuant to the Agreement, referred to in the Agreement and hereinafter as "Subject Intellectual Property," shall be owned by ÖSSUR AMERICAS, INC. and/or its affiliates,

COMPLAINT

which includes ÖSSUR hf. Because ÖSSUR hf is both the alter ego of ÖSSUR AMERICAS, INC. and an express beneficiary of the Agreement, and has accepted the benefits of the Agreement, it is bound by the terms and conditions of the Agreement, which apply equally to ÖSSUR hf and ÖSSUR AMERICAS, INC.

**CALCO's Inventions**

9.     CALCO designed adjustable cervical collars for two of ÖSSUR's competitors, the "Vista" collar sold by Aspen and the "Eclipse" collar sold by VQ OrthoCare ("VQ"), which resulted in issuance of patents in which CALCO is the first named inventor (US 7,674,234) and sole inventor (US 9,132,027), respectively. Because of his expertise, ÖSSUR approached CALCO about assisting it with the design and development of an adjustable cervical collar in September of 2015. ÖSSUR's representatives told CALCO that they had been attempting to design an adjustable cervical collar for the previous several years without success and ÖSSUR needed his expertise to assist it with the design and development of a competitive product. The parties' execution of the Agreement followed on or about October 29, 2015.

10.     CALCO brought to ÖSSUR new concepts he created for an adjustable cervical collar, including concepts for (i) a mechanism to adjust the cervical collar's fit and comfort by tightening or relaxing the pressure of the sternum support pad and allowing a forward flexing and angle change of the support pad ("the Sternum Adjustment"), and (ii) plastic/fabric pull tabs that set the size of the circumference around the neck and  keep that size without adjustment when the collar is put back on again after being removed ("Repeatable Fit Tabs").  A third concept CALCO created and brought to ÖSSUR was a mechanism for adjusting the height of the chin support for a cervical collar ("the Height Adjustment" concept). All of these concepts were created by CALCO prior to the Agreement as evidenced by written records.

**ÖSSUR'S Miami J Select Adjustable Cervical Collar**

11.     The adjustable cervical collar project that is the subject of the Agreement resulted in the development, manufacture and sale of ÖSSUR's adjustable cervical collar that it sells under the brand name of "Miami J Select" ("Miami JS").  The Miami JS uses features based on CALCO's Sternum Adjustment and Repeatable Fit Tabs concepts.  ÖSSUR's online brochure for the Miami JS refers to the

COMPLAINT

Sternum Adjustment as the Sternal-Relief Dial and describes the feature as "Simplified comfort adjustments with integrated and patented Sternal-Relief Dial". The Repeatable Fit Tabs feature is referred to in ÖSSUR's online brochure as the "Reproducible Fit option", which is described as "Easy to donn and doff with patented Reproducible Fit option." Although the brochure refers to both features as "patented", CALCO is informed and believes and thereon alleges that that there is no patent that covers the Repeatable Fit Tabs feature and that the representation in ÖSSUR'S advertising and product literature that the Miami JS's Repeatable Fit Tabs feature is patented is in fact false. In addition, CALCO is informed and believes and thereon alleges that the representation in ÖSSUR'S advertising and product literature that the Miami JS's Sternum Adjustment feature is patented was false until a patent issued on October 25, 2022 for claims that were allowed on the continuation application for the 559 Patent identified below that was filed on November 18, 2019.

**ÖSSUR's Patents and Patent Applications**

12.    ÖSSUR filed a non-provisional patent application on February 24, 2017 that was published on August 31, 2017 and ultimately issued on December 24, 2019 as Patent No. US 10,512,559 B2 ("the 559 Patent"), which lists CALCO as the first named co-inventor. The 559 Patent includes a claim for the Height Adjustment concept that CALCO created, but which is not used in the Miami JS. The 559 Patent describes CALCO's Sternum Adjustment and Repeatable Fit Tabs concepts and includes figures showing embodiments of the cervical collar that incorporate these features, but the 559 Patent does not include claims for either of these concepts. The 559 Patent claims priority from a provisional application that was filed by ÖSSUR on February 25, 2016, which did include claims for the Sternum Adjustment and Repeatable Fit Tabs as well as the Height Adjustment.

13.    A claim for the Sternum Adjustment was included in a patent application filed by ÖSSUR on September 6, 2017, Application No. 15/696,885 (the "885 Application"), Publication No. US 2018/0078400 A1, which was published on March 22, 2018. The 885 Application did not name CALCO as an inventor. The claim for the Sternum Adjustment was subsequently withdrawn by ÖSSUR from the 885 Application in October of 2020 when new claims were filed. The 885 Application describes and shows embodiments of the Repeatable Fit Tabs concept, but does not include any claims for this concept. A Notice of Allowance and Fee(s) Due was issued for the 885 Application

COMPLAINT

on May 27, 2022 and a patent issued for the allowed claims on September 27, 2022, US 11,452,633 (the "633 Patent").

14.    ÖSSUR filed a continuation application for the 559 Patent on November 18, 2019, Application No. 16/686,582, Publication No. US 2020/0085607, which includes claims for the Sternum Adjustment. A Notice of Allowance and Fee(s) Due was issued on June 24, 2022 for certain claims in the continuation application and a patent issued on the allowed claims for the continuation application on October 25, 2022, US 11,478,374 (the "374 Patent").

15.    Except for the provisional application from which the 559 Patent claims priority, CALCO is unaware of any patent application that has been filed by ÖSSUR that includes any claims for CALCO's Repeatable Fit Tabs concept. However, as alleged more fully below, ÖSSUR filed a continuation application for the 374 Patent on September 22, 2022, No. 17/950,839. That continuation application is not publicly available as of the date of filing of this complaint, and CALCO therefore cannot determine whether or not it includes any proposed claims for CALCO's Repeatable Fit Tabs concept.

**Other Facts**

16.    In the course of working with ÖSSUR on the Miami JS product, CALCO met with ÖSSUR's VP of Intellectual Property, Tatjana Latinovic, ÖSSUR's Director, R& D, Functional Healing, Duane Romo, and ÖSSUR's patent lawyers, Justin Cassell and Timothy Nichols, in January of 2016 to review CALCO's concepts for the Height Adjustment, Sternum Adjustment and Repeatable Fit Tabs and to discuss patent filing. The lawyers said that CALCO's concepts were patentable and would not infringe other patents and they approved proceeding with patent applications for those concepts. However, following this meeting, Shane Fedon, a member of ÖSSUR's management, asserted in conflict with ÖSSUR's patent lawyers that under the doctrine of equivalents, CALCO's Height Adjustment concept infringed the patent that had been issued to VQ for its cervical collar called the "Eclipse". As alleged above, CALCO is named the sole inventor in that patent. CALCO was confident his design for the New Height Adjustment did not infringe VQ's patent for the Eclipse collar. Despite his belief that his design did not infringe the VQ patent, CALCO suggested some changes to his Height Adjustment to address ÖSSUR's concern. Nevertheless, ÖSSUR began working on another height

COMPLAINT

adjustment concept that was based on CALCO's height adjustment concept that is disclosed in the patent issued to Aspen for its "Vista" collar. CALCO was concerned that this other height adjustment design infringed the patent issued to Aspen for the Vista collar and warned his counterparts at ÖSSUR about his concern. In the meantime, CALCO continued to provide his support and input to the ÖSSUR team for the design of a height adjustment mechanism, as well as for the design of the Sternum Adjustment and Repeatable Fit Tabs. The term of Agreement expired on January 31, 2017, at which point CALCO's services terminated.

17.     At the time the term of the Agreement expired and CALCO's services terminated, the adjustable cervical collar that CALCO was working on that ultimately became the Miami JS was still in the design and development phase, the production cost and design review of the collar had not been completed, and the collar was not ready for production.  ÖSSUR unilaterally postponed the "Gate 2.1" phase for product design review that was the trigger for the payment to CALCO of the second advanced royalty of $20,000 multiple times. Although some of Gate 2.1 occurred in the interim, the completion of Gate 2.1 phase was ultimately combined to occur with the Gate 3.0 phase for product design freeze, when all specifications were to be finalized for the Miami JS. The completion of Gate 2.1 and Gate 3.0 was necessary for the development of the Miami JS pursuant to ÖSSUR's product development and life cycle process and the Miami JS could not have been completed without it. The completion of Gate 2.1 and Gate 3.0 occurred on a date unknown to CALCO sometime after the term of the Agreement expired and CALCO's services terminated on January 31, 2017. The second advanced royalty of $20,000 was due upon the occurrence of Gate 2.1, but it was never paid to CALCO by ÖSSUR.

18.     CALCO is informed and believes and thereon alleges that ÖSSUR introduced the Miami JS to the marketplace and began selling it in or about June of 2019, and CALCO found the Miami JS on the ÖSSUR website at that time.  Upon finding the Miami JS online, CALCO discovered that the Miami JS incorporated his Sternum Adjustment and that his Repeatable Fit Tabs were offered as an option.

19.     Shortly after his discovery of the Miami JS on the ÖSSUR website, CALCO had a brief meeting over coffee with an ÖSSUR officer, Duane Romo, in which they discussed the Miami JS. CALCO told Mr. Romo that he had recently found the Miami JS for sale online and had noted that it

COMPLAINT

included his Sternum Adjustment concept. Mr. Romo testily replied that the feature being used in the Miami JS was "different" and abruptly ended the meeting before CALCO could say anything else.

20.     Following CALCO's meeting with Duane Romo, ÖSSUR withdrew the claim in the 885 Application for the Sternum Adjustment as alleged above and filed its continuation application for the 559 Patent to add claims for the Sternum Adjustment. CALCO believes these actions were prompted in whole or in part by his meeting with Duane Romo.

21.     Defendant ÖSSUR has claimed and continues to claim in its online advertising and product literature that the Miami JS's Sternum Adjustment, which ÖSSUR refers to as the Sternal-Relief Dial, and the Repeatable Fit Tabs feature, which ÖSSUR refers to as the Reproducible Fit option, are patented. CALCO is informed and believes and thereon alleges that there is no patent that covers the Repeatable Fit Tabs feature and that the representation in ÖSSUR'S online advertising and product literature that the Miami JS's Repeatable Fit Tabs feature is patented is in fact false. In addition, CALCO is informed and believes and thereon alleges that the representation in ÖSSUR'S online advertising and product literature that the Miami JS's Sternum Adjustment feature is patented was false until the 374 Patent issued on the allowed claims for the continuation application for the 559 Patent on October 25, 2022. At least Claims 12 and 13 of the 374 Patent that issued on the continuation application for the 559 Patent cover the Sternum Adjustment feature incorporated in the Miami JS that is based on CALCO's concept for that feature, which he created prior to entering into the Agreement as evidenced by written records. The representations in ÖSSUR'S online advertising and product literature for the Miami JS constitute admissions by ÖSSUR that the Sternum Adjustment and Repeatable Fit Tabs features are patented, patentable and/or will be patented.  By making these representations, ÖSSUR is and has been inducing members of the consumer public and institutions to purchase its Miami JS cervical collar instead of the cervical collars sold by its competitors because of these "patented" features and has been financially benefitting from such representations.

22.     On August 19, 2022, before issuance on October 25, 2022 of the patent for the allowed claims for the Sternum Adjustment in the continuation application for the 559 Patent, Plaintiff's counsel sent a letter to counsel for ÖSSUR which demanded that ÖSSUR file another continuation application on the 559 Patent to seek additional claim coverage, including broader claims, for the

COMPLAINT

1    Sternal-Relief Dial, referred to herein as the Sternum Adjustment, unless ÖSSUR conceded that the

2    allowed claims in the continuation application for the 559 Patent covered the Sternal-Relief Dial. The

3    letter also demanded that ÖSSUR seek claim coverage for the "Reproducible Fit option", referred to

4    herein as the Repeatable Fit Tabs feature, by means of a continuation application for the 559 Patent that

5    included, but was not limited to, a claim or claims for a cervical collar that included both the Sternal

6    Relief Dial and the Reproducible Fit option. ÖSSUR filed continuation application No.17/893,876 for

7    the 633 Patent on August 23, 2022 and continuation application No. 17/950,839 for the 374 Patent on

8    September 22, 2022, neither of which are publicly available for viewing as of the date of filing of this

9    complaint, and ÖSSUR has refused to provide CALCO with copies of the continuation applications.

10    Therefore, CALCO does not know what claims are sought in the continuation applications.

11    **The State Court Action**

12    23.    The original complaint in the State Court Action was filed on May 24, 2021. Preceding

13    its filing, Plaintiff and Defendants Össur Americas, Inc. and Össur hf entered into a tolling agreement

14    on February 22, 2021, which was the effective date of the tolling agreement. The tolling period ran

15    from the effective date to and including the date exactly 90 days from the effective date, which was

16    May 22, 2021. The tolling agreement had no provision for revocation and neither Plaintiff or

17    Defendants Össur Americas, Inc. and Össur hf purported to revoke the agreement at any time. The

18    tolling agreement provided for tolling of all statutes of limitation and statutes of repose applicable to all

19    claims by Plaintiff against Defendants Össur Americas, Inc. and Össur hf and their parent companies,

20    subsidiaries and affiliates. On January 18, 2022, the state court entered a stipulated order staying the

21    State Court Action pending the resolution of an action to be filed in the United States District Court for

22    Plaintiff's claims.

23    **FIRST CLAIM FOR RELIEF**

24    **(For Declaratory Relief – against All Defendants)**

25    24.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 23,

26    inclusive, as though set forth in full herein.

27    25.    Plaintiff contends, and he is informed and believes and thereon alleges that Defendant

28    ÖSSUR denies, that (i) at least Claims 12 and 13 of the 374 Patent that issued on the continuation

COMPLAINT

application for the 559 Patent cover the Sternum Adjustment feature incorporated in the Miami JS (ii) the Sternum Adjustment that is incorporated in the Miami JS is based on the concept that CALCO created prior to entering into the Agreement as evidenced by written records; (iii) the priority date of February 25, 2016 should be used to determine when the Royalty was due to CALCO; and (iv) CALCO is entitled to the Royalty for all sales of the Miami JS occurring from and after the first day following February 25, 2016 that sales of the Miami JS began. A legal controversy therefore exists between Plaintiff and Defendant ÖSSUR that requires the Court's determination and adjudication.

26.    Plaintiff requests that the Court declare and adjudicate that: (i) at least Claims 12 and 13 of the 374 Patent cover the Sternum Adjustment feature that is incorporated in the Miami JS; (ii) the Sternum Adjustment that is incorporated in the Miami JS is based on the concept that CALCO created prior to entering into the Agreement as evidenced by written records; (iii) the priority date of February 25, 2016 should be used to determine when the Royalty was due to CALCO; and (iv) CALCO is entitled to the Royalty for all sales of the Miami JS occurring from and after the first day following February 25, 2016 that sales of the Miami JS began.

## SECOND CLAIM FOR RELIEF

### (For Breach of Written Contract– against All Defendants)

27.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 26, inclusive, as though set forth in full herein.

28.    The Agreement provides *inter alia* that California law governs the execution, interpretation and performance of the Agreement.

29.    California law provides that there is implied in every contract a covenant of good faith and fair dealing which requires each of the parties not to do anything that will deprive the other parties of the benefits of the contract. This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible, but also the duty to do everything that the contract presupposes that each party will do to accomplish its purpose. This duty includes interpreting the provisions of the Agreement for their performance to effectuate the parties' intent. This duty is made express in paragraph 18(c) of the Agreement, which provides that "The provisions of this Agreement shall be interpreted in a reasonable manner to effectuate the intent of

COMPLAINT

the Parties." If it is determined that paragraph 18(c) of the Agreement does not make express the implied covenant of good faith and fair dealing, the covenant of good faith and fair dealing is in any event implied in the Agreement as a matter of law.

30.     Paragraph 18(c) and/or the implied covenant of good faith and fair dealing require ÖSSUR to pursue, in good faith, patent claims for those inventions and concepts conceived and created by CALCO that ÖSSUR is using in its Miami JS product, which are the Sternum Adjustment and Repeatable Fit Tabs. Paragraph 18(c) and/or the implied covenant preclude ÖSSUR from failing to apply for patents and failing to use good faith efforts in pursing patent applications for CALCO's Sternum Adjustment and Repeatable Fit Tabs concepts in order to avoid paying the Royalty to CALCO as provided for in the Agreement. Paragraph 18(c) and/or the implied covenant further preclude ÖSSUR from failing to name CALCO as an inventor in patent applications where he conceived the subject matter of at least one claim and/or he contributed to the conception of the subject matter of at least one claim and collaborated with one or more other persons to produce the inventions through aggregate efforts, which ÖSSUR is also required by law to do.

31.     As noted above, the Agreement provides for payment of the Royalty to CALCO on products sold by ÖSSUR which incorporate one or more of concepts created by him prior to the Agreement and for which a valid patent has been issued naming CALCO as the inventor or co-inventor. To the extent issuance of a valid patent naming CALCO as the inventor or co-inventor is a condition precedent to ÖSSUR's obligation to pay CALCO the Royalty, ÖSSUR has the legal obligation under the Agreement not to prevent the occurrence of that condition precedent to CALCO's entitlement to the Royalty. That legal obligation prohibits ÖSSUR from failing to apply for patents and/or failing to use good faith efforts in pursing patent applications for CALCO's Sternum Adjustment and Repeatable Fit Tabs concepts that ÖSSUR is using in its Miami JS product and/or failing to name CALCO as an inventor or co-inventor in patent applications which claim those inventions in order to avoid paying the Royalty to CALCO. Because ÖSSUR has prevented the occurrence of the above alleged condition precedent by failing to apply for patents and/or failing to use good faith efforts in pursing patent applications for CALCO's Repeatable Fit Tabs concept that ÖSSUR is using in its Miami JS product and also for CALCO's Sternum Adjustment concept if none of the allowed claims in the 374 Patent

COMPLAINT

cover the Miami JS, the condition precedent to the payment of the Royalty is excused. ÖSSUR has also waived the condition precedent to payment of the Royalty, and is estopped from asserting the condition precedent, as a result of, *inter alia,* representing and selling the Miami JS Sternum Adjustment and Repeatable Fit Tab features as patented, and profiting therefrom, despite the fact these features were and/or are not patented as set forth in Paragraph 21 herein above.

32.      The Agreement provides that ÖSSUR has sole discretion whether or not to make, use, sell or import any patented products, designs or processes, and full and sole discretion to patent or seek patents with regard to any Subject Intellectual Property developed by CALCO for ÖSSUR pursuant to the Agreement, and to drop any pending patent or drop the maintenance or defense of any granted patent, related to Subject Intellectual Property. Subject Intellectual Property is defined in the Agreement as any intellectual property developed by CALCO for ÖSSUR pursuant to the Agreement. Therefore, ÖSSUR has full and sole discretion only with respect to patenting intellectual property created by CALCO *after* entering into the Agreement. The Agreement does not give ÖSSUR discretion with respect to patenting intellectual property created by CALCO *prior* to entering into the Agreement. The Agreement also does not give ÖSSUR discretion with respect to patenting intellectual property created by CALCO that is made, used or sold by ÖSSUR, regardless of when it was created. Accordingly, the implied covenant of good faith and fair dealing requires ÖSSUR to make a good faith effort to patent the intellectual property created by CALCO prior to entering into the Agreement, and to patent intellectual property created by CALCO that is made, used or sold by ÖSSUR regardless of when it was created by CALCO.

33.      Patent law requires that CALCO be named as an inventor or co-inventor for any patent where he conceived the subject matter of at least one claim and/or he contributed to the conception of at least one claim and collaborated with one or more other persons to produce the invention through aggregate efforts. In addition, the Agreement does not, indeed cannot, give ÖSSUR discretion with respect to naming CALCO as an inventor or co-inventor on patents where CALCO conceived the subject matter of at least one claim and/or he contributed to the conception of the subject matter of at least one claim and collaborated with one or more other persons to produce the invention. Accordingly, patent law as well as the implied covenant of good faith and

COMPLAINT

fair dealing require ÖSSUR to name CALCO on patents as an inventor or co-inventor where he conceived the subject matter of at least one claim and/or he contributed to the conception of the subject matter of at least one claim and collaborated with one or more other persons to produce the invention through aggregate efforts. ÖSSUR is manufacturing and selling the Miami JS cervical collar which incorporates an intellectual property concept or concepts that CALCO created prior to entering into the Agreement without having made a good faith effort to patent the intellectual property.

34.    ÖSSUR has also failed to name CALCO as an inventor or co-inventor on patents for intellectual property that he created after entering into the Agreement where he conceived the subject matter of at least one patent claim that ÖSSUR has made and/or he contributed to the conception of the subject matter of at least one claim that ÖSSUR has made and collaborated with one or more other persons to produce those inventions through aggregate efforts, including but  not limited to, Claim 5 of the 633 Patent that does not name CALCO as an inventor or co-inventor.

35.    CALCO has performed all the obligations and conditions under the Agreement that he was required to perform. ÖSSUR has breached the terms and conditions of the Agreement that it was required to perform, including, but not limited to paragraph 18(c)and/or the implied covenant of good faith and fair dealing, by means of:

(i) failing to pursue patent claims for the Sternum Adjustment and Repeatable Fit Tabs concepts in the non-provisional application filed on February 24, 2017 which issued as the 559 Patent, and failing to do so despite the fact such concepts are patentable and ÖSSUR's patent lawyers told CALCO those concepts were patentable and the provisional application included claims for the Sternum Adjustment and Repeatable Fit Tabs;

(ii) withdrawing that portion of its 885 Application that included a claim for the Sternum Adjustment;

(iii) failing to name CALCO as a co-inventor in the 885 Application, despite the fact that CALCO conceived the subject matter of at least one claim in the 885 Application when it included Claim 18, and he conceived and/or he contributed to the conception of the subject matter of at least Claim 25 in the 885 Application and Claim 5 in the 633 Patent that issued thereon and collaborated

COMPLAINT

1   with one or more other persons to produce that invention through aggregate efforts;

2          (iv) belatedly filing the continuation application for the 559 Patent to add claims

3   for the Sternum Adjustment, while wrongfully denying that those claims cover the Miami JS and that

4   the Miami JS is using the Sternum Adjustment;

5          (v) failing to pursue other and broader patent claims for the Sternum Adjustment in the

6   continuation application for the 559 Patent that issued as the 374 Patent that would cover the Miami JS;

7          (vi) failing to pursue other and broader claims for the Sternum Adjustment in another

8   continuation application for the 559 Patent that issued as the 374 Patent that would cover the Miami JS;

9          (vii) failing to pursue any patent claims for the Repeatable Fit Tabs, unless such claims

10  are included in either or both of the continuation applications filed on August 23, 2022 and September

11  22, 2022;  and

12         (viii) making and selling the Miami JS which incorporates CALCO's Sternum

13  Adjustment and Repeatable Fit Tabs concepts without paying the Royalty to CALCO, and instead

14  taking the actions alleged in sub-paragraphs (i) through (vii) herein that are designed and intended by

15  ÖSSUR to avoid paying the Royalty to CALCO.

16         36.    As a proximate result of ÖSSUR's breaches alleged in paragraph 36 above, CALCO has

17  sustained compensatory damages for the unpaid Royalty and/or reputational damages according to

18  proof at trial which CALCO is informed and believes and thereon alleges currently exceed $1 Million

19  and will grow larger in amount over time.

20                          **THIRD CLAIM FOR RELIEF**

21              **(For Breach of Written Contract– against All Defendants)**

22         37.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 36,

23  inclusive, as though set forth in full herein.

24         38.    ÖSSUR has breached the Agreement by failing to pay the second advanced royalty

25  payment of $20,000 to CALCO notwithstanding the occurrence of the event triggering its obligation to

26  make the payment.

27         39.    As a proximate result of ÖSSUR's breach as alleged in paragraph 35 above, CALCO has

28  sustained compensatory damages in the amount of $20,000.00.

COMPLAINT

## FOURTH CLAIM FOR RELIEF

### (For Fraud – against All Defendants)

40.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 39, inclusive, as though set forth in full herein.

41.     Plaintiff is informed and believes and thereon alleges that at the time Defendant ÖSSUR entered into the Agreement it had no intention of paying the Royalty to CALCO, pursuing patent applications for CALCO's inventions, or naming CALCO as an inventor for his inventions in patent applications.

42.     Unaware of ÖSSUR's true intentions, CALCO was fraudulently induced by ÖSSUR to enter into the Agreement and to provide his inventions to ÖSSUR in reliance on (i) ÖSSUR's promises and representations in the negotiations preceding the execution of the Agreement that it would diligently seek patent protection for all of CALCO's inventions that it used in its cervical collar, naming him as an inventor or co-inventor, and that it would pay to him the Royalty, and (ii) ÖSSUR's express promises and representations in the Agreement. CALCO negotiated the terms of the Agreement with Duane Romo of ÖSSUR in or about September and October of 2015, who made the foregoing representations to CALCO that preceded the execution of the Agreement, and Mr. Romo executed the Agreement on behalf of ÖSSUR. In negotiating the Agreement with Mr. Romo, CALCO agreed to accept a lower consultancy fee in consideration for a higher royalty rate than ÖSSUR had originally proposed. CALCO had also initially demanded a royalty at a higher percentage rate if a patent issued as well as a royalty at a lower percentage rate if a patent did not issue. Through Mr. Romo, ÖSSUR insisted that a royalty would only be paid if a patent issued naming CALCO as an inventor. CALCO relented to ÖSSUR's demand due to Mr. Romo's assurance to him that ÖSSUR would diligently seek patent protection for all of CALCO'S inventions that it used in its cervical collar and that it would name him as an inventor or co-inventor, and CALCO's ignorance of ÖSSUR's intent not to seek patent claims for the inventions that CALCO created. CALCO did not discover ÖSSUR's true intentions to not pay him the Royalty and to not diligently seek patent protection of his inventions until after he had provided his inventions to ÖSSUR.

COMPLAINT

43.     ÖSSUR's fraudulent intent as alleged above is further evidenced by the fact that Shane Fedon criticized CALCO's Agreement with ÖSSUR to him while he was performing his services under the Agreement, and in particular, Shane Fedon complained to CALCO about his right to receive a royalty in addition to consultancy fees. At the time of Shane Fedon's complaint, CALCO thought his complaint was motivated by professional envy and jealousy. However, after CALCO's discovery that the Miami JS includes features that are based on CALCO's Sternum Adjustment and Repeatable Fit Tabs concepts, in combination with his discovery of other facts, including, but not limited to the facts alleged above and below, CALCO concluded that Shane Fedon's complaint revealed ÖSSUR's fraudulent intent. Moreover, ÖSSUR failed to name CALCO as an inventor as it was required to do by law in the 633 Patent, as well as two applications for design patents that issued, despite his contributions with respect to certain features that are the subject of claims in the 633 Patent and the design patents. ÖSSUR failed to do so because of its fraudulent and bad faith intent to avoid any possible claim by CALCO that he was entitled to a Royalty as a co-inventor of any such patent claims.

44.     As a proximate result of ÖSSUR's fraud as alleged above, CALCO has sustained compensatory damages consisting of the Royalty in amounts according to proof at trial which CALCO is informed and believes and thereon alleges currently exceed $1 Million and will grow larger in amount over time, and reputational damage in an amount according to proof at trial.

45.     Defendant ÖSSUR's fraud was willful, intentional and committed in conscious disregard of CALCO'S rights. CALCO is therefore entitled to recover punitive damages against Defendant ÖSSUR in amounts according to proof at trial to punish ÖSSUR and deter it from committing fraud in the future.

## FIFTH CLAIM FOR RELIEF

### (For Unjust Enrichment – against All Defendants)

46.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 36 and 41 through 45 as though set forth in full herein.

47.     If it is determined that ÖSSUR has the unrestricted discretion to not pursue in good faith patent claims for CALCO'S inventions that are being used in the Miami and ÖSSUR can thereby avoid paying to CALCO the Royalty specified in the Agreement by its exercise of such discretion, the

COMPLAINT

Agreement will be rendered illusory and therefore invalid and unenforceable. In that event, CALCO will have conferred a substantial benefit to ÖSSUR, namely, CALCO's inventions that ÖSSUR is using in its Miami JS product, from which ÖSSUR has earned and continues to earn substantial financial benefit without incurring any obligation to CALCO under the Agreement. So that ÖSSUR would not be unjustly enriched by obtaining the benefit of CALCO's inventions in the absence of an enforceable contractual obligation requiring it to pay the Royalty to him, CALCO would be entitled to receive a reasonable royalty for all sales of the Miami JS. This is especially true because ÖSSUR has been and is continuing to be unjustly enriched by selling the Miami JS without paying the Royalty to CALCO while it has falsely claimed and/or continues to falsely claim in its advertising and product literature that the Miami JS's Sternum Adjustment and Repeatable Fit Tab features are patented, when in fact they were not or still are not. By making these false representations, Defendant ÖSSUR is and has been inducing members of the consumer public and institutions to purchase its Miami JS cervical collar instead of the cervical collars sold by its competitors because of these "patented" features and has been financially benefitting from such representations while refusing to pay CALCO the Royalty on the grounds that the features are not patented.

## SIXTH CLAIM FOR RELIEF

### (For Correction of Patent to Add Unnamed Inventor – against All Defendants)

48.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 36 and 41 through 45, inclusive, as though set forth in full herein.

49.    After entering into the Agreement, CALCO conceived the subject matter of at least Claim 5 of the claims in the 633 Patent and/or he contributed to the conception of the subject matter of at least Claim 5, collaborated with one or more other persons to produce that invention through aggregate efforts, and made a contribution to the conception of Claim 5 that is not insignificant in quality when that contribution is measured against the dimension of the full invention. Nevertheless, the 633 Patent does not name CALCO as an inventor or co-inventor as required by law.

50.    35 USC §256(a) provides that whenever through error an inventor is not named in an issued patent, the Director of the United States Patent and Trademark Office may, on application of all parties and assignees, with proof of the facts and such other requirements as may be imposed,

COMPLAINT

issue a certificate correcting such error. An inventor not named in an issued patent also has a private right of action to obtain an order from the United States District Court instructing the Director to issue a certificate correcting the error.

51.    CALCO requests an order from the Court instructing the Director to issue a certificate adding CALCO as a named co-inventor in the 633 Patent.

### SEVENTH CLAIM FOR RELIEF

### (For Determination of Invalidity of Patent – against All Defendants)

52.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 36, 41 through 45, and 49 through 51, inclusive, as though set forth in full herein.

53.    CALCO is informed and believes and thereon alleges that ÖSSUR knew that CALCO should have been named as a co-inventor of the 885 Application and the 633 Patent that issued thereon but intentionally omitted CALCO as a named co-inventor in the 885 Application and the 633 Patent at least in part to avoid any possible claim by CALCO that he was entitled to a Royalty as a co-inventor.

54.    As a result of ÖSSUR's intentional omission of CALCO as a named co-inventor in the 885 Application, ÖSSUR obtained the allowance of the claims in the 885 Application and the 633 Patent that issued thereon by means of fraud and deception, and the Court should determine and declare that the 633 Patent is unenforceable and invalid.

WHEREFORE, Plaintiff prays for judgment as follows:

1.    On the First Claim for Relief, for declaratory relief as alleged therein;

2.    On the Second Claim for Relief, for compensatory damages in an amount according to proof at trial in excess of $1 Million to date, plus interest thereon at the maximum legal rate;

3.    On the Third Claim for Relief, for compensatory damages in the amount of $20,000.00, plus interest thereon at the maximum legal rate;

4.    On the Fourth Claim for Relief, for compensatory damages for an amount according to proof at trial in excess of $1 Million to date, plus interest thereon at the maximum legal rate;

5.    On the Fourth Claim for Relief, for punitive damages in amounts according to proof at trial;

COMPLAINT

6.     On the Fifth Claim for Relief, for a reasonable royalty in an amount according to proof at trial in excess of $1 Million to date, plus interest thereon at the maximum legal rate;

7.     On the Sixth Claim for Relief, for an order instructing the Director of the United States Patent and Trademark Office to issue a certificate adding CALCO as a named co-inventor in the 633 patent that issued on the 885 Application;

8.     On the Seventh Claim for Relief, for a declaration and determination that the patent that issues on the 885 Application is unenforceable and invalid;

9.     On all claims for relief, for Plaintiff's costs suit incurred herein; and

10.     On all claims for relief, for such other and further relief as the court deems just and proper.

Dated: October 26, 2022

/s/George B. Piggott
GEORGE B. PIGGOTT (SBN 68227)
a member of George B. Piggott, A Professional Corporation
Attorney for Plaintiff WAYNE CALCO
2603 Main Street, Penthouse
Irvine, CA 92614-6232
Tel: (949) 261-0555 | Fax; (949) 261-1085
Email: george@piggottlaw.com

COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff WAYNE CALCO hereby demands a trial by jury.


Dated: October 26, 2022                    /s/George B. Piggott
                                           GEORGE B. PIGGOTT (68227)
                                           a member of George B. Piggott, A Professional
                                           Corporation
                                           Attorney for Plaintiff WAYNE CALCO
                                           2603 Main Street, Penthouse
                                           Irvine, CA 92614-6232
                                           Tel: (949) 261-0555 | Fax; (949) 261-1085
                                           Email: george@piggottlaw.com

COMPLAINT